# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Kylie Krakow,

      Plaintiff

v.

Joshua Bissell,

      Defendant

Case No.: 2:25-cv-01020-JAD-DJA

**Order Denying Motion to Dismiss**

[ECF No. 9]

Kylie Krakow brings this 42 U.S.C. § 1983 and Nevada constitutional-law action against Nye County Sheriff's Deputy Joshua Bissell, alleging that he unlawfully seized her and used excessive force during a traffic stop that began after her car briefly touched the shoulder line on an otherwise empty road.  Krakow claims that Bissell berated her for crying, pulled her from her car, caused her to fall onto the asphalt, slammed her against the vehicle, and handcuffed her— only to release her without a citation, sobriety test, or criminal charge.

Bissell moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), contending that Krakow's complaint describes nothing more than a lawful investigatory stop supported by reasonable suspicion, force appropriate for the circumstances, and conduct protected by qualified and discretionary-act immunity.  Because I find that Krakow plausibly alleges constitutional violations, and immunity cannot be resolved on these pleadings alone, I deny Bissell's motion.

**Background**[1]

Just before 1:00 a.m. on November 10, 2024, 19-year-old Krakow was driving home after finishing a late shift as a pizza-delivery driver with her 15-year-old brother—who was training to work at the same restaurant—seated beside her.[2]  Her car momentarily drifted slightly to the right, briefly and barely touched the white shoulder line, and then immediately corrected course.[3]  No other vehicles were on either side of her car, she was not visibly weaving or driving erratically, and she committed no crime or traffic violation.[4]  But Bissell and another officer, who had been driving behind Krakow, initiated a traffic stop as she made a right turn.[5]

**A.      The stop shifts from a routine roadside encounter into a hostile exchange.**

Krakow alleges that she was already anxious by the time Bissell approached her car door because she was frightened about getting into trouble.[6]  Because her driver's side window was broken and would not roll down, she opened her door but remained seated inside the car.[7]  When Bissell asked how she was doing, Krakow began crying, explained that she was tired and trying to get home, and asked what she had done wrong.[8]  Bissell then asked why she was crying, and Krakow responded that she was distressed because she did not want to be pulled over.[9]

---

[1] These facts are taken from Krakow's complaint (ECF No. 1) and are not intended as findings of fact.

[2] ECF No. 1 at ¶ 6.

[3] *Id.* at ¶ 7.

[4] *Id.* at ¶¶ 8–10.

[5] *Id.* at ¶ 11.

[6] *Id.* at ¶ 12.

[7] *Id.* at ¶ 13.

[8] *Id.* at ¶ 14.

[9] *Id.* at ¶ 15.

Bissell told her that he had stopped her because of her "driving pattern"—that she had crossed the white line and had been driving "like an intoxicated driver," though acknowledging that he did not smell any alcohol.[10]  Krakow alleges that Bissell belittled her reaction, asked whether she was crying because of a dispute with her brother, and insisted that being pulled over was no reason to cry.[11]

While holding Krakow's driver's license, Bissell asked Krakow's age, and Krakow pointed to the license and said that she was 19 years old and that "it says it right there."[12]  Bissell responded by raising his voice and asking, "Would you stop with the fucking attitude?" and yelling, "Jesus Christ, act like an adult, you're crying, you're getting defensive," and then, when she said that his reaction was impolite, he escalated further with, "Stop with your bullshit, it's not crazy to get pulled over."[13]  When Krakow remarked that his behavior was unprofessional, Bissell shot back, "Don't tell me what's fucking professional," then asked for her insurance and told her—after she requested his badge number—that he didn't have one because he was a deputy sheriff for the Nye County Sheriff's Office.[14]

The encounter expanded to Krakow's brother when Officer Powell moved to the passenger side to question him.[15]  Concerned for her brother's safety, Krakow rolled up the passenger window, told him to remain quiet, and said that the officers could direct their

---

[10] *Id.* at ¶¶ 19, 21.

[11] *Id.* at ¶¶ 20, 22–23.

[12] *Id.* at ¶ 24.

[13] *Id.* at ¶ 26.

[14] *Id.* at ¶¶ 27–28.

[15] *Id.* at ¶ 29.

questions to her because she was the driver.[16]  Bissell yelled at her that if Powell asked her to roll the window down, she was to roll it down, then belittled her as "one emotional wreck."[17]  He then mocked her efforts to advocate for herself and her brother by saying, "You guys watch too much TikTok," questioning her request for his badge number in a sarcastic manner, and using offensive language, including, "That shit is retarded," before demanding that she exit the vehicle even after she told him that he had everything he needed.[18]

**B.      Bissell removes Krakow from the car, handcuffs her, and continues questioning her before releasing her.**

Krakow alleges that Bissell then aggressively ordered her to unbuckle her seatbelt and exit the car, warning that he would forcibly remove her if she did not.[19]  Frightened, she asked to call her mother, but Bissell denied that request.[20]  Bissell then reached into the car, grabbed Krakow, and pulled her from the driver's seat, sending her and her phone to the asphalt.[21]  He yanked her up from the ground, slammed her against her car, and forcefully placed her in handcuffs.[22]  Krakow says that she was overwhelmed and began crying and screaming under the combined weight of his behavior and the force he used.[23]

---

[16] *Id.* at ¶¶ 30–31.

[17] *Id.* at ¶¶ 32–33.

[18] *Id.* at ¶¶ 34–36.

[19] *Id.* at ¶¶ 36–37.

[20] *Id.* at ¶ 38.

[21] *Id.* at ¶ 39.

[22] *Id.* at ¶ 40.

[23] *Id.* at ¶ 41.

Bissell continued questioning Krakow about intoxication even after handcuffing her, and she repeatedly denied being impaired.[24]  But Bissell told her that she was being uncooperative, even though she had provided her documentation and answered his questions throughout the stop.[25]  He kept returning to the premise that her driving had raised concerns about impaired driving and broadened the questioning to narcotics, specifically asking about methamphetamine and marijuana.[26]  Krakow denied that too and reminded him that she was 19-years old.[27]  Bissell also looked through the vehicle's windows, apparently searching for open containers.[28]

While still in handcuffs, Krakow managed to retrieve her phone and call her mother for assistance.[29]  When Bissell asked what her parents could do for her, Krakow responded that she wanted someone there because he scared her.[30]  Bissell answered, "Okay, be scared."[31]  Bissell eventually removed the handcuffs and told Krakow to go home.[32]  No sobriety tests were administered, no citation was issued, and no criminal charge followed.[33]

**C.    Procedural posture**

Based on these events, Krakow sues Bissell in his individual capacity and brings federal and Nevada constitutional claims for unlawful seizure and excessive force.  Bissell moves to

---

[24] *Id.* at ¶ 42.
[25] *Id.* at ¶ 3.
[26] *Id.* at ¶ 45.
[27] *Id.* at ¶ 46.
[28] *Id.* at ¶ 47.
[29] *Id.* at ¶ 48.
[30] *Id.* at ¶ 48–49.
[31] *Id.*
[32] *Id.* at ¶ 50.
[33] *Id.* at ¶ 52–53.

dismiss all claims, arguing that the complaint alleges only a lawful Terry stop supported by reasonable suspicion, not an arrest, and force that was reasonable under the circumstances.  He also invokes qualified immunity on the federal claims and discretionary-act immunity on the state constitutional claims.

## Discussion

Federal Rule of Civil Procedure (FRCP) 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[34]  While FRCP 8 does not require detailed factual allegations, the properly pleaded claim must contain enough facts to "state a claim to relief that is plausible on its face."[35]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a FRCP 12(b)(6) motion to dismiss.  The court must first accept as true all well-pleaded factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[36]  The court must then consider whether the well-pleaded factual allegations state a plausible claim for relief.[37]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[38]  "A court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."[39]  The plaintiff must make direct or inferential factual allegations about "all the material elements necessary to sustain

---

[34] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[35] *Twombly*, 550 U.S. at 570.

[36] *Iqbal*, 556 U.S. at 678–79.

[37] *Id.* at 679.

[38] *Id.*

[39] *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

recovery under *some* viable legal theory," and a complaint that fails to meet this standard must be dismissed.[40]

**A.    Krakow plausibly alleges federal and state constitutional violations.**

The Fourth Amendment prohibits unreasonable searches and seizures, prolonged detention without reasonable suspicion of a crime justifying prolonged detention, and the use of excessive force.[41]  The Nevada Constitution contains provisions that offer similar protections to those contained within the Fourth Amendment, so I address these claims together under the Fourth Amendment standards.[42]

**1.    *Krakow plausibly alleges an unlawful-seizure claim.***

Krakow's first and second causes of action allege an unlawful traffic stop and arrest. Bissell argues that those claims fail at the pleading stage because, even accepting Krakow's allegations, the complaint describes a lawful traffic stop supported by reasonable suspicion and a permissible investigatory detention.[43]  He insists that Krakow's admitted contact with the shoulder line, the late hour, her emotional presentation, and her refusal to follow directions gave

---

[40] *Id.*

[41] U.S. Const. Amend. 4.

[42] Krakow manually filed footage of the night in support of her opposition to Bissell's motion that she cites to in her complaint.  Bissell argues that I should not consider the body-camera footage on this Rule 12(b)(6) motion because the pleadings are the limit of my review at this stage. ECF No. 16 at 2–3.  He contends that Krakow—not he—is the party relying on material outside the complaint by citing and attempting to incorporate unfiled video and still images into her opposition, and he argues that doing so would improperly convert this motion into one for summary judgment.  In his view, Krakow's claims must stand or fall on the complaint alone, and the complaint's own allegations already establish a lawful Terry stop, not a false arrest or excessive-force violation.  Because I resolve this motion based on the allegations within the four corners of the complaint, I need not and do not consider the parties' competing arguments about the body-camera footage or other materials outside the pleadings.  *See* Fed. R. Civ. P. 12(b)(6).

[43] ECF No. 10 at 5–11.

him ample grounds to investigate possible impairment, order her out of the car, and briefly handcuff her as part of a lawful Terry stop.

A traffic stop is a seizure under the Fourth Amendment, and it is reasonable only if the officer had probable cause to believe a traffic violation occurred or reasonable suspicion of criminal activity.[44] Officers may not extend a traffic stop beyond the time reasonably required to complete its mission absent independent reasonable suspicion.[45] That mission is narrow; officers may address the traffic violation, conduct ordinary inquiries incident to the stop, and take negligibly burdensome precautions necessary for officer safety.[46] Whether officers diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly is a fact-intensive inquiry.[47]

Krakow plausibly alleges that this stop drifted beyond that constitutional curb. Her complaint begins with a modest driving fact and little else: a brief touch of the shoulder line, an immediate correction, no surrounding traffic, no weaving, and no erratic driving. From that point forward, the stop yielded none of the usual marks of an impaired-driving investigation. Krakow says that she denied drinking, denied using drugs, and was told that only her "driving pattern" had drawn attention. She further alleges that Bissell acknowledged that he did not smell alcohol. And despite repeatedly returning to the topic of intoxication, he never administered field-sobriety tests or never even issued a citation. Taking those allegations as true, the

---

[44] *Maryland v. Buie*, 494 U.S. 325, 331 (1990); *United States v. Garcia*, 205 F.3d 1182, 1186 (9th Cir. 2000).

[45] *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015).

[46] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

[47] *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

8

complaint plausibly suggests not a diligently pursued DUI investigation, but an encounter that kept escalating while its objective foundation kept thinning.

Bissell's briefing tries to supply that missing foundation with Krakow's distress. He repeatedly characterizes her crying, fear, and emotional presentation as part of the constellation of facts that made the stop's extension reasonable. But the Ninth Circuit has also long recognized that ordinary distress during a police encounter does not, without more, furnish reasonable suspicion of criminal activity.[48] The facts as pled do not compel the inference of impairment that Bissell prefers; they just as plausibly support the far more ordinary inference that a young driver was unraveling under the pressure of a late-night stop that became adversarial.

### 2. *Krakow plausibly alleges that the force used against her was excessive.*

Bissell argues that Krakow's excessive-force claims fail because her allegations, even taken as true, describe only reasonable control measures during a lawful investigatory stop—not constitutionally excessive force.[49] To state a claim for excessive force under the Fourth Amendment, a plaintiff must allege facts showing that an officer used more than the force a reasonable and prudent law enforcement officer would use under the circumstances.[50] Courts balance "the nature and quality of the intrusion" against the governmental interests at stake, considering the severity of the suspected offense, whether the suspect posed an immediate threat, and whether he was actively resisting or attempting to flee.[51] Of those factors, the "most

---

[48] *United States v. Chavez-Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001), *amended*, 279 F.3d 1062 (9th Cir. 2002), *overruled on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005).

[49] ECF No. 10 at 11.

[50] *Graham v. Connor*, 490 U.S. 386, 395 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).

[51] *Id.*

9

important" is whether the suspect posed an "immediate threat."[52]  There must be "objective factors" to justify an officer's "fear for his safety or the safety of others."[53]

Bissell insists that the force alleged here was minimal and justified because suspected impaired driving presents a serious public-safety concern, Krakow was emotional, and she did not comply with every direction he gave her.[54]  To support that argument, he relies on the Ninth Circuit's holdings in *Williamson v. City of National City*[55] and *Jackson v. City of Bremerton*.[56]  In *Williamson*, officers removed a protester from a disrupted city-council meeting after repeated warnings and after the protesters had agreed in advance that they would go limp and refuse to cooperate if arrested.[57]  Williamson was handcuffed, refused to support her own weight, was pulled backward by her arms and wrists for about twelve seconds, and suffered a sprained wrist, mild swelling, and a torn rotator cuff.[58]  The Ninth Circuit nevertheless characterized the force as minimal because the officers did not strike her, throw her down, or use pain-compliance techniques or weapons, and because the city retained a low but legitimate interest in restoring order and removing protesters who had deliberately made themselves dead weight.[59]

---

[52] *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

[53] *Est. of Strickland v. Nev. Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023) (cleaned up).

[54] Bissell also points to Krakow's sparse injury allegations as further evidence that the force used was slight and thus reasonable.  ECF No. 9 at 14.  But that is a factual inference in his favor, and this case is still at the pleading stage.  While the extent of an injury may bear on the nature and quality of the force used, Krakow need not plead detailed medical harm to state an excessive-force claim.  *See, e.g., Meredith v. Erath*, 342 F.3d 1057, 1063–64 (9th Cir. 2003).

[55] *Williamson v. City of National City*, 23 F.4th 1146, 1151 (9th Cir. 2022).

[56] *Jackson v. City of Bremerton*, 268 F.3d 646, 650–52 (9th Cir. 2001).

[57] *Williamson*, 23 F.4th at 1151–55.

[58] *Id.*

[59] *Id.*

In *Jackson*, officers attempted to arrest a suspect on an outstanding warrant in a public park, but he fled into a crowd of 30 to 50 family members and friends, others tried to shield him, the officers were substantially outnumbered, and the scene deteriorated into shouting and physical altercations.[60]  After officers warned the crowd that chemical irritant would be used if they did not disperse, Jackson ran in to interfere with an officer's attempt to control another participant.  She was sprayed with the irritant, pushed to the ground during handcuffing, and sustained a fractured finger.[61]  The Ninth Circuit found the force reasonable because Jackson's interference posed an immediate threat to officer safety and to the officers' ability to restore order.

But Krakow alleges no facts that would suggest a comparable threat here.  It's true that the governmental interest that Bissell invokes is a legitimate one: a suspected DUI stop can present public-safety concerns.  But the facts Krakow pleads, if true, made that concern modest at the start and weaker still by the time Bissell used force.  On her telling, Krakow was not weaving through traffic or barreling down the road.  She was a frightened 19-year-old driving home from work with her younger brother after briefly touching the shoulder line and correcting course.  Once stopped, she gave Bissell her license and insurance, answered his questions, denied drinking or using drugs, and did not try to flee, strike an officer, reach for a weapon, or drive away.  She alleges no facts to suggest that, at the moment Bissell pulled her from the car, she posed an immediate threat to officer safety or public safety.

Nor does the complaint allege the kind of resistance that drove the outcomes in Bissell's cases.  Krakow says that when Officer Powell moved to question her 15-year-old brother, she

---

[60] *Jackson*, 268 F.3d at 651–53.

[61] *Id.*

rolled up the passenger window and asked that the officers direct their questions to her instead. And when Bissell ordered her out of the car, she alleges only that she asked to call her mother. Bissell may call that noncompliance, but at this stage the complaint supports the competing inference that Krakow was acting out of fear and protection, not aggression.

So what followed, on Krakow's version, permits the inference that this was not a measured effort to stabilize a dangerous scene, but rather a sudden escalation of force. She alleges that Bissell "forcibly grabbed" her, "dragged her out, causing her to fall onto the asphalt," then "aggressively pulled her from the ground, slammed her against the vehicle, and forcefully handcuffed her."[62]  Taking those allegations as true, as this court must at this juncture, Krakow has plausibly alleged that the force used outpaced the need for it.  So I deny the motion to dismiss on those grounds.

**B.     Bissell is not entitled to qualified immunity on Krakow's federal claims at this stage.**

Bissell next argues that even if Krakow plausibly alleges her § 1983 claims for false arrest and excessive force, he is entitled to dismissal based on qualified immunity.  Qualified immunity protects government officials "from money damages unless a plaintiff pleads facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct."[63]  Qualified immunity can be addressed at the motion-to-dismiss stage if the court "can determine, based on the complaint

---

[62] Bissell argues, without supporting caselaw, that Krakow's use of terms like "slammed" is conclusory and therefore not entitled to the presumption of truth at the pleading stage.  Even if "slammed" carries some rhetorical force, the complaint does not rely on that word alone.  It alleges a sequence of concrete physical acts that plausibly describes unconstitutional force.

[63] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

itself, that qualified immunity applies."[64]  Bissell says this is such a case because no clearly established law would have told a reasonable officer that his conduct was unconstitutional.

For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right."[65]  The "rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority."[66]  And the right may not be characterized "at a high level of generality."[67]  Instead, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established."[68]  The takeaway from the Supreme Court's recent qualified-immunity jurisprudence is that a court's analysis of the clearly-established-law prong "must be undertaken in light of the specific context of the case, not as a broad general proposition"[69]

### 1.   *Bissell isn't entitled to qualified immunity on Krakow's unlawful-seizure claim because she alleges only a brief touch of the shoulder line.*

Krakow cites to the Ninth Circuit's holding in *United States v. Colin*[70] to support her proposition that "it has long been held in the Ninth Circuit that a driver briefly touching a road's painted lane does not give officers reasonable suspicion to pull a driver over and conduct a traffic stop."[71]  Bissell responds that *Colin* is inapposite because, in his view, it is a narrow lane-change

---

[64] *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023).

[65] *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015)).

[66] *Id.*

[67] *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742).

[68] *Id.*

[69] *Id.*

[70] *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002).

[71] ECF No. 1 at 6, ¶ 54.

case about lawful lane changes and California's lane-straddling statute—not a clearly established rule for suspected-DUI stops involving shoulder encroachments.[72]  He thus contends that *United States v. Alvarez*,[73] a California district court case, is the better comparator.

Bissell's attempt to cabin *Colin* to California's lane-straddling statute reads the case too narrowly.  True, *Colin* addressed whether the officer had reasonable suspicion to stop a car for violating California's lane-straddling statute.[74]  But the Ninth Circuit separately addressed the officer's alternative justification: suspected DUI.[75]  During the 35-to-45 seconds that the officer watched the car, the car drifted right until its wheels rode the solid white line at the lane's outer edge for about ten seconds.[76]  It then eased back across the lane, signaled, and moved into the left lane, where it drifted left again and rode the solid yellow line for about ten seconds before returning to the lane's center.[77]  The car stayed within the speed limit, signaled its lane changes, and otherwise drove normally.[78]  The panel held that those observations did not create reasonable suspicion of impaired driving because they showed neither "pronounced weaving" nor weaving over a "substantial distance."[79]  And it warned that if an officer could suspect intoxication whenever a driver failed to follow "a perfect vector down the highway," "a substantial portion of the public would be subject each day to an invasion of their privacy."[80]  The officer's failure to

---

[72] ECF No. 16 at 6.

[73] *United States v. Alvarez*, 226 F. Supp. 3d 1059 (E.D. Cal. 2016).

[74] *Colin*, 314 F.3d at 443–45.

[75] *Id.* at 445–47.

[76] *Id.* at 441.

[77] *Id.*

[78] *Id.*

[79] *Id.* at 446.

[80] *Id.*

ask whether the driver had been drinking or to conduct field-sobriety testing only reinforced the court's conclusion that the stop lacked reasonable suspicion.[81]

*Alvarez* also does not help Bissell because it involved the fact missing here: an actual departure from the lane. The officer in *Alvarez* saw the car cross the white line by about ten inches, drive onto the rumble strip, jerk back into the lane, return to the outer white line, and travel on that line for 50 to 100 feet while negotiating a curve.[82] The *Alvarez* court called the reasonable-suspicion issue "very close" and distinguished *Colin* because the officer in *Alvarez* saw the vehicle cross the right lane line by about ten inches onto the rumble strip with difficulty negotiating a curve, while the vehicle in *Colin* merely drove on the lane lines without crossing outside them.[83] Krakow alleges the latter; she briefly and barely touched the white shoulder line and immediately corrected.

Bissell's remaining facts do not justify the stop because they came too late. Krakow's crying, distress, and later interaction with the officers may bear on other parts of the encounter, but they cannot retroactively supply the reasonable suspicion that was missing when Bissell activated his lights. Under *Colin*, that was not enough to suspect DUI. So the qualified-immunity question cannot be resolved on the pleadings.

> **2.      Bissell is not entitled to qualified immunity on Krakow's excessive-force claim at this stage.**

Bissell also seeks qualified immunity on Krakow's excessive-force claim, arguing that no case clearly prohibits an officer from removing a noncompliant, emotionally distraught driver

---

[81] *Id.*

[82] *Alvarez*, 226 F. Supp. 3d at 1062.

[83] *Id*. at 1068.

from a vehicle and briefly handcuffing her during a late-night DUI investigation.  That framing, however, assumes the facts in Bissell's favor.  At this stage, I must take Krakow's version as true and ask the qualified-immunity question through that lens: whether existing precedent would have put a reasonable officer on notice that forcibly extracting, slamming against a vehicle, and handcuffing a motorist who was not threatening, fleeing, or otherwise presenting objective signs of danger was unlawful.

The Ninth Circuit's decision in *Liberal v. Estrada* and its progeny help answer that question.[84]  In *Liberal,* officers argued that the driver's turn into a darkened alley near a dumpster suggested that he was trying to evade police, hide criminal activity, or dispose of contraband.[85]  But the court held that those suspicions did not make the initial stop lawful or render the later force reasonable as a matter of law.[86]  Construing the facts in the driver's favor, the stop lacked reasonable suspicion, and the force came only after he had provided his license and registration and the records check revealed nothing suspicious.[87]  Because the driver posed no immediate safety threat, was not actively fleeing, and was not shown to be armed or dangerous, the panel held that the officers could not reasonably stop and frisk him—much less pull him from the car, shove him against the door, and handcuff him for about half an hour.[88]

In *Hopson v. Alexander*, the Ninth Circuit applied *Liberal* but distinguished its facts.[89]  In *Hopson*, officers approached a parked vehicle with guns drawn, forcibly removed the driver, and

[84] *Liberal v. Estrada*, 632 F.3d 1064, 1081 (9th Cir. 2011), *abrogated on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023).

[85] *Id.* at 1068, 1079.

[86] *Id.* at 1079.

[87] *Id.*

[88] *Id.* at 1078–79.

[89] *Hopson v. Alexander*, 71 F.4th 692, 695 (9th Cir. 2023).

handcuffed him based on their belief that he and his associate were casing a gas station for an imminent armed robbery.[90]  The panel acknowledged that forceful extraction and handcuffing may violate the Fourth Amendment under some circumstances, but the risk profile present in *Hopson* was fundamentally different than the government interest presented in *Liberal*.[91]  The officers observed conduct that they interpreted based on training and experience as "casing" behavior for an imminent armed robbery, including repeated repositioning of a vehicle, scanning the surroundings, and an exchange between two individuals that suggested coordinated activity.[92]

Those cases frame the problem with Bissell's qualified-immunity argument.  He characterizes Krakow as noncompliant and emotionally distraught during a late-night DUI investigation.  But the complaint alleges that the DUI investigation rested on a brief and corrected touch of the shoulder line, and that before Bissell used force, Krakow had provided her license, denied alcohol and drug use, and posed no objective safety threat.  She did not flee, reach for a weapon, threaten the officers, or physically resist.  Her alleged conduct was crying, questioning Bissell's behavior, asking for identifying information, and telling her brother not to answer questions.  Taking Krakow's allegations as true, this case looks more like *Liberal* than *Hopson*, so I cannot determine at this stage whether Bissell is entitled to qualified immunity.  He may renew those arguments at summary judgment.

---

[90] *Id.* at 695–96.

[91] *See id.* at 701–04.

[92] *Id.* at 699.

**C.     Bissell is not entitled to discretionary immunity at this stage for the Nevada Constitution claims.**

With the federal claims addressed, I turn to the remaining state-constitution claims. Bissell argues that even if Krakow has sufficiently pled them, they are barred by discretionary-act immunity. Nevada law precludes claims against state officers based on acts or omissions relating to a "discretionary function," even if that discretion is abused.[93] "But decisions made in bad faith, such as abusive conduct resulting from hostility or willful or deliberate disregard for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function."[94] Bissell says his conduct falls comfortably within the statute. In his view, he was exercising ordinary police judgment during a late-night DUI investigation—responding to suspicious driving, managing an emotional and noncompliant driver, and using only the force reasonably necessary to control a tense roadside encounter. Bissell asserts that those were discretionary decisions made in good faith and that Krakow has not pled nonconclusory facts showing otherwise.

Krakow responds that her allegations place this case outside the statute's protection because they plausibly describe action taken in willful or deliberate disregard of her rights. She alleges that instead of dispelling his suspicion, he belittled her for crying, insisted she had no reason to be upset, mocked her request for accountability, cursed at her, and escalated the encounter. He told her to "stop with the fucking attitude," "act like an adult," and "stop with your bullshit," mocked her by saying, "You guys watch too much TikTok," and, after dragging her from the car, dismissed her fear with, "okay, be scared." And after all of that, he did not

---

[93] Nev. Rev. Stat. § 41.032(2).

[94] *Jones v. L.V. Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017).

administer sobriety tests or issue a citation; he simply removed the handcuffs and told her to go home. Those facts plausibly support Krakow's theory, so dismissal on that ground is premature.

<strong>Conclusion</strong>

IT IS THEREFORE ORDERED that Bissell's motion to dismiss **[ECF No. 9] is**

**DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
June 2, 2026

19